IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| KATHLEEN ERVIN | ) | CASE NO. 4:11-cv-00790 |
| | ) | |
| Plaintiff, | ) | |
| | ) | MAGISTRATE JUDGE MCHARGH |
| | ) | |
| v. | ) | |
| | ) | |
| COMMISSIONER OF SOCIAL | ) | |
| SECURITY ADMINISTRATION, | ) | MEMORANDUM OPINION & ORDER |
| | ) | |
| Defendant. | ) | |
| | ) | |

This case is before the Court pursuant to the consent of the parties. (Doc. 15). The issue before the Court is whether the final decision of the Commissioner of Social Security (the "Commissioner") denying Plaintiff Kathleen Ervin's ("Plaintiff's" or "Ervin's") applications for a Period of Disability and Disability Insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 416(i) and 423 and Supplemental Security Income benefits under Title XVI of the Social Security Act, 42 U.S.C. § 1381 *et seq.*, is supported by substantial evidence and is therefore conclusive.

For the reasons set forth below, the Court VACATES the decision of the Commissioner and REMANDS the case to the Social Security Administration.

I. INTRODUCTION & PROCEDURAL HISTORY

On April 26, 2007, Plaintiff filed an application for Supplemental Security Income benefits. (Tr. 15). On May 3, 2007, Plaintiff also applied for a Period of Disability and Disability Insurance benefits. *Id.* Ervin's applications were denied initially and upon reconsideration. (Tr. 12-14). Plaintiff alleged an onset disability date of February 1, 2006 due to

1

suffering from depression, aggression, hallucination, poor vision as well as back, knee and wrist pain (Tr. 168). On August 22, 2008, Plaintiff filed a written request for a hearing before an administrative law judge ("ALJ"). *Id*.

Administrative Law Judge Paula Fow (the "ALJ") convened a hearing in Seven Fields, Pennsylvania on October 14, 2009 to evaluate Plaintiff's applications. (Tr. 31-50). Plaintiff attended the hearing in person and was represented by her attorney, Mr. C. Douglas Ames, via video conference. *Id*. A vocational expert, Mr. Fred A. Monaco (the "VE"), also appeared and testified at the hearing. (Tr. 46-49). On November 6, 2009, the ALJ issued her decision applying the five-step sequential analysis[1] to determine if Plaintiff retained the ability to perform work existing in significant numbers in the national economy. (Tr. 15-23). Based on this analysis, the

---

[1] The Social Security Administration regulations require an ALJ to follow a five-step sequential analysis in making a determination as to "disability." *See* 20 C.F.R. § § 404.1520(a), 416.920(a).

> The Sixth Circuit has summarized the five steps as follows:
>
> (1) If a claimant is doing substantial gainful activity – i.e., working for profit – she is not disabled.
>
> (2) If a claimant is not doing substantial gainful activity, her impairment must be severe before she can be found to be disabled.
>
> (3) If a claimant is not doing substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and her impairment meets or equals a listed impairment, the claimant is presumed disabled without further inquiry.
>
> (4) If a claimant's impairment does not prevent her from doing her past relevant work, she is not disabled.
>
> (5) Even if a claimant's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that accommodates her residual functional capacity and vocational factors (age, education, skills, etc.), she is not disabled.

*Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990).

2

ALJ held Ervin was not disabled. *Id*. Following the ALJ's decision, Plaintiff sought review of the ALJ's ruling from the Appeals Council. (Tr. 7). However, the Council denied Plaintiff's request and rendered the ALJ's decision the final decision of the Commissioner. (Tr. 1-6). Judicial review is proper pursuant to 42 U.S.C. §§ 405(g) and 1383(c).

## II. MEDICAL EVIDENCE

On April 20, 2006, Dr. Sharon Dawso ("Dr. Dawso") treated Plaintiff for hypertension and allergy symptoms. (Tr. 296). Dr. Dawso prescribed both blood pressure and seasonal allergy medication to treat Plaintiff's symptoms. (Tr. 299). During initial questioning, Dr. Dawso inquired about Plaintiff's past medical history. (Tr. 297). When describing her previous psychological symptoms, Ervin denied symptoms of depression and anxiety. *Id*.

On August 17, 2007, Ervin was examined by psychologist Dr. Donald Degli, M.A. ("Dr. Degli"). While recounting her medical history to Dr. Degli, Plaintiff denied having a history of depression and showed no appearance of depression or anxiety. (Tr. 257). Dr. Degli also found Plaintiff's memory and orientation to be good. (Tr. 256). He deemed her speech and conversational skills to be appropriate and direct. *Id*. Dr. Degli assessed her sensorium, concentration, thought, judgment and insight as adequate. *Id*. He found her activities to be diminished. *Id*. Dr. Degli believed Plaintiff may have been exaggerating some of her symptoms but he was not convinced to the point of diagnosing malingering. *Id*. He concluded Ervin had a below-average intelligence and a dysthymic disorder. *Id*.

On February 21, 2008, Mr. J. McMurray from the Bureau of Disability Determination in Columbus, Ohio, requested additional information regarding Plaintiff's prior examination by Dr.

3

Lara Salmins ("Dr. Salmins"). (Tr. 295).[2] Dr. Salmins indicated Ervin did not have a history of mental impairments and did not mention such mental impairments. *Id*. Dr. Salmins provided no additional findings or information. *Id*.

On April 23, 2008, Dr. John J. Brescia ("Dr. Brescia") evaluated Plaintiff's mental health condition. (Tr. 300). Plaintiff informed Dr. Brescia she previously attempted to receive mental health treatment but was unable to do so due to financial difficulties. Dr. Brescia found Plaintiff exhibited moderate signs of depression. *Id*. He concluded her psychological problems constituted a moderate impairment and assigned Ervin a GAF score of 60. *Id*.

Ervin's treating physician, Dr. Brian S. Sullivan ("Dr. Sullivan"), treated Plaintiff from November 2008 through September 2009. (Tr. 369). On September 2, 2009, Dr. Sullivan completed a Residual Functioning Capacity ("RFC") form evaluating Plaintiff's mental impairments following ten months of treatment. *Id*. He found Ervin was very limited emotionally, cognitively and intellectually. (Tr. 371). He also found Plaintiff had severe limitations in her ability to accept instruction and criticism from superiors, respond appropriately to co-workers, relate to the general public, complete tasks at a consistent pace, cooperate with others without distractions, maintain concentration and behave predictably. (Tr. 370-71).

On January 23, 2009, Plaintiff presented to Dr. Eric Schaffert ("Dr. Schaffert") with complaints of a dry cough. (Tr. 373). Dr. Schaffert found Plaintiff's judgment and memory were intact and her orientation was sufficient. (Tr. 375). He observed she did not demonstrate symptoms of anxiety, depression or agitation. *Id*.

---

[2] Upon review of the transcript, the undersigned could not locate additional information regarding this previous appointment in the record.

4

### III. PLANTIFF'S TESTIMONY

Ervin testified she was born on January 14, 1955, and was 54 years old on the date of her hearing before the ALJ. (Tr. 34). Although she attended high school, Ervin indicated she received only a ninth grade education. (Tr. 35). With regard to employment, Plaintiff noted she was employed between 1994 and 2004 as a "cleaning person." *Id*. In March 2005, she worked as an adult sitter. *Id*. Between October 2005 and February 2006 she was employed at a nursing home as a supply distributor. *Id*. Most recently, Plaintiff worked as a ticket taker at a carnival from 2006 to 2007. (Tr. 35-36).

Ervin testified she lived alone, did her own laundry and cooked microwave meals. (Tr. 36-37). Plaintiff indicated she was frequently assisted by her daughter who came over twice per week to help with housework and took Plaintiff shopping for groceries. (Tr. 36). Ervin noted her daily routine consisted of watching television, eating and napping. (Tr. 37-39). She testified she regularly cries, doesn't like to be around others, hears voices telling her to hurt herself and feels aggressive. (Tr. 37, 43). Ervin mentioned she takes Trazadone and Seroquel for her mental health-related symptoms. (Tr. 42).

### IV. VOCATIONAL EXPERT TESTIMONY

The VE testified at the hearing before the ALJ to assess whether jobs existed in the national economy that a hypothetical person of Plaintiff's age, education, work history and RFC could perform. (Tr. 46-49). Based upon the hypothetical person described to him, the VE identified assembly, machine operation and hand working positions that a hypothetical person with Plaintiff's RFC was able to perform (Tr. 48).

The ALJ then posed a second hypothetical question to the VE, describing a person with the limitations previously stated, but who also required frequent breaks and absences, and

5

inquired if the person could perform the same three jobs. *Id*. The VE concluded substantial gainful activity would be impossible for this hypothetical person. *Id*.

## V. ALJ'S RULING

The ALJ made the following relevant findings of fact and conclusions of law. At the first step of the five-step sequential evaluation process, the ALJ found Ervin had not engaged in substantial gainful activity since her onset date of February 1, 2006. (Tr. 17). At step two, the ALJ determined Plaintiff suffered from the following severe impairments: "borderline intellectual functioning, depressive disorder [and] personality disorder." *Id*. However, at step three, the ALJ found Ervin did not have an impairment or combination of impairments that met or equaled any of the impairments listed in 20 C.F.R. Part 404, Subpart P., Appendix 1. (Tr. 18). Between the third and fourth step, the ALJ found Ervin possessed the RFC to perform light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b). *Id*. The ALJ determined Ervin was able to perform simple, routine and repetitive tasks. *Id*. Nonetheless, she noted Plaintiff was unable to perform tasks involving prolonged reading for content and comprehension. *Id*. The ALJ also mentioned Ervin should not have frequent interaction with supervisors, coworkers or the public at large. (Tr. 19). At step four, the ALJ determined Ervin could not perform any of her past relevant work due to these limitations. (Tr. 21). However, the ALJ deemed Ervin capable of performing other jobs existing in significant numbers in the national economy in light of her age, education, work experience and RFC. (Tr. 22). The ALJ concluded Plaintiff's RFC permitted her to perform work as a bench assembler, abrasive machine operator and other hand working occupations. (Tr. 22).

6

## VI. <u>DISABILITY STANDARD</u>

A claimant is entitled to Disability Insurance and/or Supplemental Security Income benefits only if the claimant is able to establish a disability within the meaning of the Social Security Act. *See* 42 U.S.C. §§423, 1381. A claimant is deemed disabled if the claimant cannot perform "substantial gainful employment by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve (12) months." *See* 20 C.F.R. §§404.1505, 416.905.

## VII. <u>STANDARD OF REVIEW</u>

Judicial review of the Commissioner's decision regarding Disability Insurance and/or Supplemental Security Income benefits is limited to an assessment of whether the Commissioner's decision is supported by substantial evidence in the record as a whole and whether the Commissioner used the proper legal standards in reaching its decision. *See Cunningham v. Apfel*, 12 F. App'x 361, 362 (6th Cir. 2001); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984)*; Richardson v. Perales*, 402 U.S. 389, 401 (1971). "Substantial evidence" has been defined as more than a scintilla of evidence but less than a preponderance of the evidence. *See Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 535 (6th Cir. 1981). Therefore, if a reasonable mind may view the record evidence as sufficient support for the Commissioner's final benefits determination, then such a determination must stand. *Id.* Regardless of whether this Court could resolve the disputed facts differently or if substantial evidence supports the opposite conclusion, the Commissioner's determination must be affirmed if adequately supported by substantial evidence. *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986)*; Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983). This Court may not try

the case de novo, resolve evidentiary conflicts or decide questions of credibility. *See Garner*, 745 F.2d at 387. However, the Court may examine the entire record in rendering its decision regardless of whether such evidence was referenced in the Commissioner's final decision. *See Walker v. Sec'y of Health & Human Servs.*, 884 F.2d 241, 245 (6th Cir. 1989).

## VIII. ANALYSIS

Ervin asserted two objections to the ALJ's opinion. First, Ervin argued the ALJ improperly evaluated the opinions of her treating psychiatrist Dr. Sullivan. Second, Plaintiff argued the ALJ's hypothetical questions to the VE did not accurately depict Ervin and as a result the ALJ's conclusion regarding Plaintiff's ability to sustain employment lacked substantial evidence because the ALJ relied on the VE's testimony in response to incomplete hypothetical questions.

### A. Dr. Brian Sullivan's Opinion

Before moving to the fourth step in the sequential evaluation process, the ALJ determines the claimant's RFC. 20 C.F.R. §§ 404.1520(e), 416.920(e). The RFC is the claimant's remaining capacity to engage in work-related physical and mental activities despite functional impairments stemming from the claimant's medically determinable limitations. 20 C.F.R. §§ 404.1545, 416.945; 20 C.F.R. Part 404, Subpt. P, App. 2 § 20.00(c); *see also Cohen v. Sec'y of Health & Human Servs.*, 964 F.2d 524, 530 (6th Cir. 1992). The ALJ, as opposed to a physician, is ultimately responsible for determining a claimant's RFC. *Poe v. Comm'r of Soc. Sec.*, 342 F. App'x 149, 157 (6th Cir. 2009); 20 C.F.R. §§ 404.1546(c), 416.946(c). The ALJ found Ervin possessed the RFC required to perform light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b), limited Plaintiff to simple tasks, prohibited Plaintiff from performing fast-paced

tasks or duties requiring prolonged reading and noted Ervin should not have more than occasional interaction with superiors, co-workers or members of the general public.

While the ALJ is entrusted with making the RFC determination, the ALJ must follow the treating physician rule, which governs an ALJ's assessment of a treating physician's opinion and requires full deference to be offered to the opinion if it is 1) supported by objective evidence and 2) consistent with the record as a whole.  *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004).  If either condition is not met, the treating source's opinion is not given controlling weight and the ALJ must apply a number of factors to determine what weight should be afforded to the opinion.  *Id.*  Such factors include: 1) the length of the treatment relationship; 2) the frequency of examination; 3) the nature of the treatment relationship; 4) the extent of the treatment relationship; 5) the supportability of the opinion; 6) the consistency of the opinion with the record as a whole and 7) the specialization of the treating source.  20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2).  Additionally, the ALJ must supply "good reasons" for the weight granted to the treating physician's opinion.  *Id*.  No matter how little or great of weight is assigned to the treating source's opinion, the ALJ maintains the authority to determine if the claimant is disabled.  *Walker v. Sec'y of Health & Human Servs.*, 980 F.2d 1066, 1070 (6th Cir. 1992); *see also King v. Heckler*, 742 F.2d 968, 973 (6th Cir. 1984).

In the present case, Plaintiff's treating physiologist, Dr. Sullivan, found Ervin had severe emotional, cognitive and intellectual limitations.  (Tr. 371).  However, the ALJ assigned little weight to Dr. Sullivan's opinion because the ALJ felt it was inconsistent with the record as a whole.  (Tr. 21, 371).  Specifically, the ALJ pointed to 1) Ervin's independent living arrangement; 2) prior work history; 3) lack of previous psychological treatment and 4) denial of psychological problems to her physician, as factors which ran contrary to Dr. Sullivan's opinion

9

and cast doubt on its supportability. (Tr. 21). Plaintiff argues the ALJ did not satisfy the requirements of the treating physician rule because although the ALJ supplied some reasons for discrediting Dr. Sullivan's opinion, the ALJ did not explain how such reasons contradicted Dr. Sullivan's opinion. The Court agrees the ALJ failed to provide good reasons for the weight assigned to Dr. Sullivan's opinion.

First, Plaintiff argues the ALJ failed to identify how Dr. Sullivan's opinion regarding Plaintiff's limited ability to perform work functions was inconsistent with Ervin's prior work history. Defendant attempts to demonstrate such inconsistency by showing Plaintiff previously held several jobs, interacted well with authority figures, had not been previously terminated or laid off due to issues interacting with others and was capable of responding to others in an appropriate manner. However, the ALJ's opinion makes no mention of such inconsistencies, rendering Defendant's arguments post-hoc rationalizations.

The ALJ did little more beyond reiterating Ervin's testimony regarding her previous work history and the impairments Ervin believed made her unable to work. The ALJ noted Ervin's previous work history as an adult sitter, cleaner and supply distributor. The ALJ also mentioned Ervin's claims of nervousness, dislike for people, auditory hallucinations and propensity for rage. However, the ALJ did not demonstrate an inconsistency between Plaintiff's former employment and Dr. Sullivan's opinion regarding Plaintiff's limited ability to perform various work functions. Plaintiff's work history spanned fourteen years from 1994 and 2007. However, she did not allege she become disabled until February 1, 2006. Although Plaintiff did return to work after her alleged onset date, her seasonal employment as a carnival ticket taker in April and May of 2006 and 2007 did not constitute substantial gainful activity. Thus, Ervin's work following her alleged onset date would not by itself undermine Dr. Sullivan's opinion. The ALJ

10

did not sufficiently explain how Plaintiff's previous employment, both prior to and following her disability date, was probative of her present ability to work and inconsistent with Dr. Sullivan's findings. Therefore, the ALJ failed to demonstrate good reasons for discrediting his opinions.

Second, Plaintiff contends the ALJ failed to identify how Dr. Sullivan's opinion was inconsistent with Ervin's lack of psychiatric treatment until recently. The claimant bears the burden of demonstrating an entitlement to Social Security disability benefits by proving the existence of a disability. *Boyes v. Sec'y of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994); *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992). Plaintiff did not seek medical treatment for mental impairments between her alleged onset disability date of February 1, 2006 and August 2007. The ALJ partially discredited Dr. Sullivan's opinion due to Plaintiff's lack of treatment during this time period. However, according to Social Security Ruling 96-7, the ALJ cannot draw inferences about a claimant's failure to pursue medical treatment without first examining any reasons the claimant has offered to explain the lack of such treatment. SSR 96-7p; *see Craft v. Astrue*, 539 F.3d 668 (7th Cir. 2008).

Plaintiff presented a number of reasons to explain why she *may* have neglected to seek treatment. (Doc. 16 at 12). Plaintiff suggested she may have been in denial of her symptoms, delusional, harbored a distrust of physicians or her symptoms may have worsened over time. *Id*. But, the ALJ did not have a duty to entertain all of the possible, indefinite reasons why Plaintiff may have not sought treatment. *See* SSR 96-7p. However, the ALJ did need to examine the legitimacy of the reasons Plaintiff provided for failing to seek treatment. *Id*. ("the adjudicator must not draw any inferences about an individual's symptoms and their functional effects from a failure to seek or pursue regular medical treatment without first considering any explanations that the individual may provide"). Notably, Dr. Brescia, a physician whose opinion was granted

11

significant weight by the ALJ, mentioned Plaintiff cited financial difficulties as a barrier to obtaining psychological care in the past. (Tr. 303). Such a rationale could explain why Plaintiff did not seek psychological care at an earlier date. However, the ALJ did not acknowledge or address this portion of Dr. Brescia's opinion.

Regardless of whether or not the ALJ should have considered Plaintiff's statements to Dr. Brescia as an explanation for her lack of previous care, the Court finds the ALJ did not adequately explain how Plaintiff's failure to seek psychological treatment prior to establishing care with Dr. Sullivan compromised his findings. Unlike many physical impairments, psychological impairments may not be immediately recognized. *See Michael v. Astrue*, 2010 WL 1994905 at \*4 (E.D. Ky. 2010). Plaintiff's lack of treatment does not necessarily show she wasn't suffering from a mental disorder or didn't later develop a mental disorder. An ALJ should tread carefully before discrediting a claimant's diagnosis of a psychological disorder simply because the claimant failed to seek treatment at an earlier date. *Blakenship v. Bowen*, 874 F.2d 1116, 1124 (6th Cir. 1989). Likewise, a claimant's poor judgment in not pursuing rehabilitation should not be a determining factor to discredit a physician's opinion. *Id*. *See Sullivan v. Astrue*, 2008 WL 4399439 at \*7 (E.D. Ky. 2008). Though there was a lack of treatment for mental disorders for several years during the relevant period, Plaintiff eventually established psychological care with Dr. Sullivan and received regular treatment for her mental impairment for nearly a full year. While her lack of earlier psychological care might call into question the onset date and duration of her impairment, it does not necessarily undercut Dr. Sullivan's findings. Furthermore, despite Ervin's lack of previous treatment, Dr. Brescia also diagnosed her with depression which bolsters Dr. Sullivan's opinion. Accordingly, the

Plaintiff's lack of prior treatment was not a good reason for the ALJ to discredit Dr. Sullivan's findings.

Third, Plaintiff argues the ALJ failed to identify how Dr. Sullivan's opinion was inconsistent with Ervin's denial of psychological problems to her physician. The ALJ discredited Dr. Sullivan's opinion by pointing to a 2006 record where Ervin denied depression and anxiety to Dr. Dawso.[3] However, this opinion occurred prior to Dr. Brescia's examination in April 2008 and Dr. Sullivan's ongoing treatment beginning in November 2008. During Plaintiff's appointments with both doctors, Plaintiff admitted having mental impairments. The ALJ did not adequately explain how Plaintiff's denial of mental problems to Dr. Dawso in 2006 contradicted Dr. Sullivan's findings issued in 2009. Absent such explanation, it was not reasonable for the ALJ to look at an opinion from three years earlier to discredit Dr. Sullivan's opinion. The mere fact that Plaintiff denied mental impairments to her physicians over two years prior to her seeking treatment from Dr. Sullivan does not automatically invalidate later evidence to the contrary. The ALJ needed to explain why a distant 2006 opinion was determinate of Dr. Sullivan's findings. The Court would be in a better position to understand the ALJ's reasoning if Plaintiff denied psychological problems while receiving treatment from Dr. Sullivan, however that is not the case. Thus, Ervin's prior denial of psychological problems was not a sufficient reason for the ALJ to discredit Dr. Sullivan's findings.

Finally, Ervin argues the ALJ failed to adequately explain how Dr. Sullivan's findings were inconsistent with her living arrangement. The ALJ points to a number of factors to

---

[3] In August 2007, Plaintiff also denied a history of depression to Dr. Degli and showed no appearance of depression or anxiety. Additionally, on March 7, 2008, Ervin denied any history of mental impairments to Dr. Salmins. The ALJ did not cite to either of these opinions to demonstrate Ervin's previous denial of psychological problems, but regardless, both opinions were issued prior to Plaintiff receiving treatment from Dr. Sullivan or Dr. Brescia.

13

demonstrate inconsistency between Dr. Sullivan's opinion and Plaintiff's living arrangement by showing Plaintiff lives by herself, which suggests a degree of independence. (Tr. 18, 20). The ALJ noted Plaintiff occasionally launders her own clothes and cooks TV meals for herself. *Id.* The ALJ highlighted that Ervin keeps to a regular schedule where she wakes up at 5:00 AM, watches television, takes a nap and retires to bed by 8:00 PM. *Id.* While it was reasonable for the ALJ to conclude Plaintiff's living arrangement demonstrated a degree of independence, Dr. Sullivan did not evaluate Plaintiff's ability to live independently. Instead, his opinion was restricted to assessing Ervin's ability to perform work functions. (Tr. 371). Even if the Court found that Plaintiff's level of independence alone undermined Dr. Sullivan's findings, the Court is not persuaded that Plaintiff's independence was a good reason to discredit the whole of Dr. Sullivan's opinion. Since the ALJ's other three rationales did not supply valid reasons to discredit Dr. Sullivan's findings, accepting the fourth reason alone would not justify the complete rejection of Dr. Sullivan's opinions. Accordingly, Plaintiff's living arrangement was not a good reason for the ALJ to discredit Dr. Sullivan's opinions.

### B. Vocational Expert

During the fifth step of the sequential evaluation process, the ALJ asked vocational expert Fred A. Monaco to determine if any jobs existed in the current national economy that a hypothetical person of Plaintiff's age, education and work history could perform based upon Plaintiff's RFC. (Tr. 46-49). A vocational expert's testimony can provide the substantial evidence necessary to support the ALJ's decision but it will only do so if it is in response to an accurate hypothetical question. *Varley v. Sec'y of Health & Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987). A hypothetical question presented to the VE is accurate if it describes the Plaintiff's individual physical and mental impairments. *Id*. Because the Court found the ALJ

did not give good reasons for discrediting Dr. Sullivan's opinion, it is not necessary for the Court to declare whether the ALJ's hypothetical question to the VE was sufficient. Should the ALJ seek testimony from a VE on remand, the ALJ must articulate a hypothetical question that accurately describes the Plaintiff's limitations. *Id*.

## IX. DECISION

For the foregoing reasons, the Magistrate Judge finds that the decision of the Commissioner is not supported by substantial evidence. Accordingly, the Court VACATES the decision of the Commissioner and REMANDS the case back to the Social Security Administration.

IT IS SO ORDERED.

s/ Kenneth S. McHargh  
Kenneth S. McHargh  
United States Magistrate Judge

Date: August 2, 2012.